**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **GILBERT RIVERA and JAMES HALL, for and on behalf of over 100 Jane and John Does,** | ) ) ) | |
| | ) | **No. 12 C 06032** |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | **Judge John J. Tharp, Jr.** |
| **PREMIERE TRADE SOFTWARE, LLC and JAMES DICKS,** | ) ) ) | |
| **Defendants.** | | |

## MEMORANDUM OPINION AND ORDER

This putative class action, removed from state court, alleges fraud, negligent misrepresentation, negligent failure to supervise, and a violation of the Illinois Consumer and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA") against Premiere Trade Software, LLC, and James Dicks. The defendants move to dismiss the complaint on numerous grounds and also move for Rule 11 sanctions against the plaintiffs' counsel. The Court agrees that the complaint is inadequate, but for a reason that the defendants have not advanced: the Court does not, based on the allegations of the present complaint, appear to have subject matter jurisdiction over the plaintiffs' claims. The Court therefore denies the pending motions without prejudice and grants the parties leave to file supplemental briefs addressing the Court's jurisdiction.

**I. BACKGROUND**

In essence, the plaintiffs complain, on behalf of a putative class, that Premiere Trade Software, LLC, a Florida limited liability company, and Dicks, its chief executive, deceived the plaintiffs by promoting financial trading software that did not make the plaintiffs money, as the

defendants' sales pitch allegedly promised. Am. Compl. (Dkt. 10) ¶ 23. The plaintiffs allege that they saw Premiere Trade's television commercials, paid to attend Premiere Trade seminars in Illinois, and purchased Premiere Trade's software, along with promised technical support. *Id.* ¶ 1. The plaintiffs add that "they did not make profits" using the Premiere software and that instead, "even though they followed the Premiere program to the letter, Plaintiffs lost money …." *Id.* ¶ 23. Further, the plaintiffs allege that the technical support number offered by Premiere Trade stopped working. *Id.* ¶ 23.

Based on these allegations, the plaintiffs contend that Premiere Trade deceptively and fraudulently advertised and promoted its trading software and training programs. *Id.* ¶¶ 26, 30. The plaintiffs further contend that Premiere negligently misrepresented financial information and negligently failed to supervise its salesmen. *Id.* ¶¶ 33, 36.

The plaintiffs filed their initial class action complaint against "Premiere Trade" ("and certain Jane and John Does," who can be disregarded; *see* 28 U.S.C. § 1441(b)) in the Circuit Court of Cook County, Illinois, in July 2012. Dkt. 1-1 ¶ 6. Although their complaint did not say so expressly, the class they purported to represent consisted of individuals who attended the defendants' seminars in Illinois and purchased the Premiere software and associated equipment. *Id.* ¶ 1. The plaintiffs sought damages, apparently on behalf of the entire class rather than themselves individually, "in excess of $2,000,000." *Id.* ¶ 29(a). The state court complaint identified the plaintiffs as Illinois "residents" and Premiere as a limited liability company "located" in Florida. *Id.* ¶¶ 7, 8.

Premiere removed the case to this Court on July 31, 2012. Dkt. 1. Its notice of removal stated that this Court has diversity jurisdiction over plaintiffs' claims under 28 U.S.C. § 1332. *Id.* ¶¶ 7-10. Noting that the plaintiffs were "residents" of Illinois and Wisconsin, respectively, the

notice denied that "Premiere Trade" was a legal entity and that "it is assumed that Premiere Trade Software, LLC is the intended defendant." *Id.* n.1. The removal notice identified Premiere Trade Software, LLC ("PST")[1] as a Florida limited liability company with its principal place of business in Florida and stated that "all of its members are Florida residents." *Id.* ¶ 10. With respect to the amount in controversy threshold for diversity jurisdiction, the notice of removal noted only that the amount in controversy exceeds $75,000 and that the plaintiffs were seeking in excess of $2 million in damages. *Id.* ¶¶ 12, 13.

The plaintiffs did not contest removal. After the case was removed, however, they filed a "First Amended Complaint" ("FAC"). Dkt. 10. The FAC names "Premiere Trade Software, LLC" and James Dicks as defendants; the plaintiffs remain the same. The FAC purports to rest on diversity jurisdiction, and alleges that "the parties are citizens of different states," but it contains no allegations regarding the specific citizenship of the plaintiffs. *Id.* ¶ 2. As for the defendants, it alleges that "Premiere is a group of Florida limited liability companies all sharing the same trade name," all of which are "operated" by defendant Dicks. *Id.* ¶ 12. The FAC includes a list of some 19 other companies, most with the word "Premiere" in their names that are presumably part of the group described. *Id.* n.1. As to the amount in controversy, the FAC alleges only that it exceeds $75,000; it omits the statement in the original complaint that the plaintiffs seek damages in excess of $2 million and does not include any other quantification of damages. *Id.* ¶ 2.

The defendants now move to dismiss the FAC on a variety of grounds, including: (1) improper venue under Fed. R. Civ. P. 12(b)(3) based on the parties' purported contractual

---

[1] The notice of removal never actually defines this acronym, but in context, it appears to be a designation for Premiere Trade Software, LLC—notwithstanding that the logical acronym for that entity would be "PTS" rather than "PST."

agreement and its forum selection clause; (2) the absence of personal jurisdiction over defendant James Dicks; and (3) the plaintiffs' claims are barred by the relevant statutes of limitation. Defs.' Br. (Dkt. 15) at 2, 8; Defs.' Reply Br. (Dkt. 25) at 5. Alternatively, the defendants ask the Court to transfer the case to the federal district court for the Middle District of Florida so that the defendants may seek to compel arbitration in that jurisdiction. Defs.' Br. at 7.

The Court cannot take up these arguments, however, because the allegations of the FAC (and the original complaint and notice of removal) are insufficient to establish the Court's subject matter jurisdiction.[2] Neither party has raised any question concerning the Court's jurisdiction, but the Court is obligated to ensure its own jurisdiction is proper. *See Wernsing v. Thompson*, 423 F.3d 732, 743 (7th Cir. 2005) ("[N]ot only may the federal courts police subject matter jurisdiction *sua sponte*, they must."); *Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998) ("It is axiomatic that a federal court must assure itself that it possesses jurisdiction over the

---

[2] Jurisdiction in a removal case is measured as of the time of removal. *See Matter of Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992). That does not mean, however, that only the allegations of the original complaint may be considered. "The rule that subject-matter jurisdiction depends on the state of things at the time of the action brought does not suggest [that] ... [t]he state of things and the originally alleged state of things are ... synonymous." *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473 (2007) (citations and quotation marks omitted). Thus, if the FAC demonstrated that the allegations of citizenship in the original complaint were false, there would be no barrier to considering the FAC in assessing the Court's jurisdiction. *Id.* ("demonstration that the original allegations were false will defeat jurisdiction"). Moreover, the general rule that, when a defendant removes a case to federal court based on the presence of a federal claim, an amendment eliminating the original basis for federal jurisdiction generally does not defeat jurisdiction, has no application here. The allegations by the plaintiffs in the FAC are not substantively different than those in the original complaint; the FAC does not attempt to add parties not encompassed by the original complaint or otherwise to add allegations that might compromise jurisdiction (thereby giving life to the sort of forum manipulation concerns that animate this rule). This is not a case in which the plaintiff has amended the complaint in order to deprive the court of jurisdiction over a case in which jurisdiction was proper at the time of removal. Based on the allegations of the original complaint, now highlighted in the FAC, there is no basis to believe that there was jurisdiction over this case at the time of removal.

subject matter of an action before it can proceed to take any action respecting the merits of the action.").

## II.   DISCUSSION

The jurisdictional allegations of record in this case are deficient in several ways:

First, a complaint that relies on diversity jurisdiction must allege the specific citizenship of each party, in order to ensure complete diversity. *See Meyerson v. Harrah's East Chicago Casino*, 299 F.3d 616, 617 (7th Cir. 2002). Neither the original complaint, the notice of removal, nor the FAC, however, adequately alleges the citizenship of either of the named plaintiffs or Premiere (the FAC does, however, adequately allege that Dicks is "a citizen and resident of Florida"). Am. Compl. ¶ 13. The Court might surmise from the prior pleadings and from paragraph 18 of the FAC that Rivera is a resident of Illinois and Hall a resident of Wisconsin, but that still would not cure the problem, as it is an individual's domicile, not residence, that determines citizenship for purposes of diversity jurisdiction. *See Winforge, Inc. v. Coachmen Indust., Inc.*, 691 F.3d 856, 867 (7th Cir. 2012) ("An allegation of residence is not sufficient to establish citizenship, which requires domicile."). Domicile is a person's legal home, "a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere"—not necessarily where that individual lived when the complaint was filed. BLACK'S LAW DICTIONARY (9th ed. 2009); *see Koch v. Koch*, 450 F.3d 703, 712 n.7 (7th Cir. 2006) (quoting BLACK'S LAW DICTIONARY definition); *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 729-30 (7th Cir. 1991) (citizenship is the "state of the individual's domicile … the state he considers his permanent home"). The Seventh Circuit has repeatedly warned litigants about the consequences of failing to adequately allege the citizenship of individuals and that it is the plaintiff's burden to do so. *See, e.g., Guaranty Nat. Title Co. Inc. v.*

*J.E.G. Assocs.*, 101 F.3d 57, 58-59 (7th Cir. 1996) (noting that "these lawyers knew what they had to do, and they did not do it … Anyway, it is not the court's obligation to lead counsel through a jurisdictional paint-by-numbers scheme"; remanding with instructions to dismiss for lack of jurisdiction); *America's Best Inns, Inc. v. Best Inns of Abilene, LP*, 980 F.2d 1072, 1074 (7th Cir. 1996) (noting that "it is the obligation of the plaintiff to establish jurisdiction, and in this obligation the plaintiff has failed" and remanding to dismiss for lack of jurisdiction).

The FAC (like the original complaint and the notice of removal) also fails to establish the citizenship of "Premiere Trading Software, LLC." For starters, unlike a corporation, the citizenship of a limited liability company is not where it is chartered and/or has its principal place of business. Rather, an LLC is a citizen of every state in which its members are citizens. Thus, to adequately allege the citizenship of an LLC, the complaint must identify the members of the LLC and their respective citizenships. *See Thomas v. Guardsmark, LLC*, 487 F.3d 531, 533-34 (7th Cir. 2007) (citizenship of an LLC is the citizenship of each of its members); *Belleville Catering Co. v. Champaign Market Place, LLC*, 350 F.3d 691, 693-94 (7th Cir. 2003) (same and remanding with instructions to dismiss where complaint did not allege citizenship of each member of LLC). Or, at a minimum, it must affirmatively allege that none of the members of the LLC are citizens of states in which any plaintiff is also a citizen. The FAC does neither. The notice of removal does not cure this problem, as it alleges only the residence of the LLC members, not their citizenship.

The failure to allege the citizenship of Premiere Trade LLC's members, however, may be only the tip of the iceberg. As the FAC is constructed, there may be an even bigger obstacle to establishing diversity jurisdiction. The original complaint named as a defendant "Premiere Trade." The notice of removal interpreted this to mean that the plaintiff intended to sue

"Premiere Trade Software, LLC." Consistent with that interpretation, the FAC named Premiere Trade Software, LLC and identified it as "a group of limited liability companies" including 19 additional entities. Am. Compl. n.1 and ¶ 12. As such, the plaintiffs seemingly purport to have sued all 20 of the Premiere entities identified in the complaint; if that is the case, then they must allege the citizenship of each corporate entity and for the LLCs, the citizenship of each of its members.

Beyond the problems relating to the allegations of diversity, the pleadings also fail to establish that the jurisdictional amount in controversy threshold can be met. The original complaint alleged that "Plaintiffs" purchased "various software and scanning devices from Premiere in amounts ranging from $1695.00 to $5495.00 with monthly fees often included." Dkt. 1-1 ¶ 1. It also alleged that "Plaintiffs" had incurred damages "in excess of $2,000,000." *Id.* ¶¶ 29, 34, 38. Though these allegations are somewhat ambiguous, the Court construes them to mean that the named plaintiffs and other putative class members paid between $1695 and $5495, plus monthly fees, for equipment they purchased and that, in the aggregate, the putative class members incurred in excess of $2 million in damages as a result of the alleged problems with that software and equipment. These allegations do not suffice to establish that the amount in controversy can be met.

In *Snyder v. Harris,* 394 U.S. 332 (1969), the Supreme Court held that the claims of putative class members may not be aggregated in order to meet the amount in controversy threshold for the exercise of diversity jurisdiction. The Class Action Fairness Act ("CAFA") modified that rule, allowing the aggregation of class member claims to meet the jurisdictional threshold (in excess of $5 million) for class actions covered by CAFA (those in which the class members number 100 or more). *See* 28 U.S.C. § 1332(d)(5) and (d)(6). Neither the plaintiffs nor

the defendants have invoked CAFA as a basis of subject matter jurisdiction in this case, but the pleadings are insufficient to meet either the amount in controversy threshold for diversity jurisdiction ($75,000) or the CAFA threshold ($5 million).

As to the diversity threshold, the anti-aggregation rule of *Snyder* requires that at least one of the plaintiffs have a claim in excess of $75,000. Based on the alleged purchases of software and equipment in the neighborhood of $5,000, monthly fees in the neighborhood of $100 a month (*see* FAC ¶ 1), and purchases that allegedly occurred sometime between 2008 and 2010,[3] there appears to be virtually no prospect that either of the named plaintiffs individually has a claim in excess of $75,000; thus, the jurisdictional threshold for diversity jurisdiction is not satisfied.

The pleadings also fail to establish jurisdiction under CAFA, for several reasons. First, the complaint alleges that there were "approximately 100" purchases of Premiere's software and equipment; that allegation falls short of solidly establishing that CAFA's requirement of 100 or more class members has been met, but assuming that it suffices for that purpose, so as to allow aggregation of class member damages, neither the complaint, the FAC, nor the notice of removal provides a basis to infer that the class as a whole suffered damages in excess of $5 million. There is no damage claim at all in the FAC and the plaintiffs' original complaint alleged only that the plaintiffs were seeking damages of about 40% of that threshold level. The notice of removal says nothing at all to support an inference that the class has an aggregate claim in excess of $5 million.

---

[3] As noted further below, there is substantial reason to believe that the plaintiffs' purchases date from 2006. If so, they might be able to meet the $75,000 threshold, but their claims are likely to be time-barred.

These deficiencies are so pervasive that the Court cannot adequately confirm its jurisdiction on the basis of the pleadings to date. As the removing party, the defendants bear the burden of establishing the Court's jurisdiction. Having failed to do so, the Court could dismiss the case and remand it to the state court (notwithstanding the plaintiffs' lack of contemporaneous objection to the removal). In the Court's view, however, it is more appropriate, particularly in light of the passage of time, simply to deny the pending motions without prejudice and to permit the defendants (and the plaintiffs, if they wish) to file a supplemental brief addressing the question of subject matter jurisdiction. *See The Northern League, Inc. v. Gidney*, 558 F.3d 614, 614-15 (7th Cir. 2009) (remand permitted, but more appropriate course might have been to permit the parties to amend the jurisdictional allegations). If the Court determines, on the basis of further submissions, that it has subject matter jurisdiction, then it will address any challenge to the FAC that the defendants may wish to reassert, including the question of whether the plaintiffs' claims are timely.

In that regard, the plaintiffs would be well-advised to consider whether they can, in good faith, assert the claims set forth in the FAC. The FAC alleges that the events relevant to their claims occurred between 2008 and 2010. Am. Compl. ¶ 19. In their briefs opposing the defendants' motion to dismiss, however, the plaintiffs admit, in no uncertain terms, that the events giving rise to this lawsuit—specifically, their agreements to purchase the Premiere software system—occurred in 2006. Pls.' Sur-Reply n.1 ("Plaintiffs' Amended Complaint erroneously set the dates for the claim … Plaintiffs['] contracts are both dated in 2006."); *id.* ¶¶ 1, 2 ("In 2006, Premiere … conducted television advertising"; "In 2006 … Premiere salesman conducted seminars").

If that statement is correct, then it would appear that each of the plaintiffs' claims is barred by the applicable statute of limitations.[4] For a fraud action under the Illinois Consumer and Deceptive Business Practices Act, the statute of limitations is three years, which accrues when the plaintiff knows or reasonably should know of his injury and that it was wrongfully caused. 815 ILCS § 505/10a(e); *see Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 441 (7th Cir. 1994) (citation omitted). The statute of limitations for fraud and negligent misrepresentation is five years. 735 ILCS 5/13-205; *see, e.g., Clark v. Robert W. Baird Co., Inc.*, 142 F. Supp. 2d 1065, 1074-75 (N.D. Ill. 2001) (fraud); *Credit Gen. Ins. Co. v. Midwest Indem. Corp.*, 916 F. Supp. 766, 774 (N.D. Ill. 1996) (negligent misrepresentation).[5] The plaintiffs filed their First Amended Complaint on October 30, 2012, six years after the plaintiffs admit signing the software purchase agreement at issue and attending the Premiere seminars, *after* any relevant statute of limitations ran.

The Court makes no definitive ruling regarding the timeliness of the plaintiffs' claims at this point (indeed, it is not yet established that the Court even has jurisdiction to do so). Accordingly, the Court denies the defendants' motion for sanctions, which is predicated on the FAC's erroneous allegation concerning the dates of the plaintiffs' purchases from Premiere, without prejudice. The plaintiffs should, however, anticipate that they will be required to address the timeliness of their claims if those claims go forward in this Court.

\* \* \*

---

[4] The FAC invokes Illinois law, so it seems likely that the Illinois statutes of limitation will apply. Regardless, even if Florida law applied, the plaintiffs' claims would be time-barred. *See* Fla. Stat. § 95.11(3)(a) ("an action founded on negligence") (4 year statute of limitations).

[5] The Court is unable to find case law applying a statute of limitations to the tort of "negligent failure to supervise," but the Court assumes that the "catch-all" statute of limitations of five years as stated in Section 13-205 would cover this claim as well.

For the reasons set forth above, the defendants' motion to dismiss, or in the alternative, to transfer the case [14] and the defendants' motion for sanctions [20] are denied without prejudice. Either party may file a supplemental brief addressing the question of this Court's subject matter jurisdiction, as of the date of removal of this case, within 14 days of this order. The Court will consider any such submissions and issue a further order as appropriate; in the absence of any submission by either party, the case will be remanded to the Circuit Court of Cook County.

Entered: March 31, 2014 _____

John J. Tharp, Jr.
United States District Judge